**Peter J. LANIOK, Plaintiff–Appellant,**

**v.**

**ADVISORY COMMITTEE OF the BRAINERD MANUFACTURING COMPANY PENSION PLAN, Defendant–Appellee.**

**No. 1357, Docket 90–9089.**

United States Court of Appeals, Second Circuit.

Argued April 15, 1991.

Decided June 18, 1991.

Peter C. Nelson, Rochester, N.Y., for plaintiff-appellant.

Paul J. Yesawich, III, Rochester, N.Y. (Harris Beach & Wilcox, Sydney R. Rubin, of counsel), for defendant-appellee.

Steven S. Zaleznick, Cathy Ventrell–Monsees, Robert L. Liebross, American Ass'n of Retired Persons, Washington, D.C. (Edgar Pauk, Legal Services for the Elderly, New York City, of counsel), for plaintiff-appellant as amicus curiae.

Before FEINBERG, VAN GRAAFEILAND and McLAUGHLIN, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Peter Laniok appeals from a judgment of the United States District Court for the Western District of New York, Michael A. Telesca, Ch. J., reported at 753 F.Supp. 1115, granting defendant's motion for summary judgment and dismissing Laniok's claim pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., for benefits allegedly due to him under the terms of the pension plan maintained by his former employer, Brainerd Manufacturing Company (Brainerd). Defendant, the Advisory Committee of the Brainerd Manufacturing Company Pension Plan (Advisory Committee), asserted that Laniok had relinquished his rights to participate in the pension plan by executing a written waiver at the inception of his employment by Brainerd. The issue before us is whether the district court erred in granting summary judgment to the Advisory Committee based on the court's determination that Laniok validly, knowingly and voluntarily waived his right to participate in the pension plan. For reasons set forth below, we reverse the grant of summary judgment and remand for further proceedings.

## Background

Peter Laniok graduated from a technical high school. He spent most of his working life as a tool and die maker at the Stromberg–Carlson Company (Stromberg) in Rochester, where he was employed for 32 years. When the tool room of the Stromberg plant in Rochester was closed in the summer of 1977, Laniok was almost 57 years old and was earning $8.20 per hour. Although Laniok could have remained at the plant doing other work, he voluntarily retired.

On leaving Stromberg, Laniok immediately began to receive a pension of about $300 per month from Stromberg's pension plan. Laniok explained this amount as "full retirement" under Stromberg's "85-point plan," which by Laniok's description provided that if the employee's age and years of service added up to 85 or more, the employee would get "the full retirement." Laniok had signed up for the plan, which required that he contribute to it in order to receive benefits, in about 1957. Laniok said that he did not understand the basic terms of the Stromberg plan before he elected to participate in it, but nevertheless concluded that "it was a wise thing to do."

Soon after Laniok retired from Stromberg, he began looking for other work to supplement his modest pension income. He found a job fairly quickly and worked for a short time at $8.00 per hour, but left because he did not like the working conditions. Laniok thereafter applied for jobs at several other places, and was eventually offered night work at $10.00 per hour. In early February 1978, before he started on the night job, Laniok learned from a former co-worker at Stromberg who was employed by Brainerd that Brainerd was looking for a tool and die maker. Brainerd, located in East Rochester, had about 130 employees at that time. Laniok met with Harry Lippman, Brainerd's president, on February 3, 1978. Lippman himself was then in his late 70's. Laniok and Lippman gave somewhat different versions of their dealings, both of which are set forth below.

According to Laniok, Lippman asked him his age, how long he intended to work and whether he was drawing a pension. Laniok told Lippman that he was 57 years old, did not intend to work beyond age 65 and was drawing a small pension. Lippman then mentioned that Brainerd had a pen-

sion plan, but gave no details. Laniok said that he had been earning $8.20 an hour at Stromberg and Lippman responded that Brainerd couldn't pay that much. Laniok then suggested $8.00 per hour, to which Lippman agreed. Laniok told Lippman that he would have to talk over the job offer with his wife. After some discussion with his wife, Laniok decided to take the Brainerd day job instead of the better-paying night job. He accordingly called Lippman to accept within a day of their first meeting, and started work at Brainerd on February 6, 1978.

Again according to Laniok, Lippman's assistant, Frances Storto, brought Laniok a document to sign a few days after he started work, on February 9, 1978. This document was the waiver at issue in this case. It is headed "Waiver of Participation in the Brainerd Manufacturing Company Pension Trust" and reads in its entirety:

> I, Peter Laniok, for personal and other reasons, desire not to participate in the Brainerd Manufacturing Pension Plan, and I hereby waive participation in that plan. This waiver is made voluntarily by me, and is not made as a condition to employment or retaining employment with Brainerd Manufacturing Company. This waiver is effective for the present year, 1978, and all subsequent years of my employment with the Company.

The waiver bears the typewritten date, February 9, 1978, and is signed by Laniok and by Frances Storto as witness. Laniok asserts that Storto told him, "Mr. Lippman wants you to sign this," that he replied that he didn't want to sign it, since it meant he wouldn't get any benefits, but that Storto insisted that Mr. Lippman wanted him to sign it. Laniok states that he signed the waiver because he was afraid that if he refused to sign either he would be fired or his working conditions would be made "too miserable for me to work in."

Lippman described his dealings with Laniok differently, both in an affidavit executed in August 1988 and in a deposition in 1990, when he was almost 90 years old. According to Lippman's affidavit, when Laniok told Lippman how much he wanted per hour, Lippman replied that Brainerd could not pay that much, adding that Brainerd had a pension plan that would further increase the cost of employing Laniok. Laniok responded that he was not interested in the pension plan, that he planned to work only until he qualified for social security and that he would receive a pension from Stromberg. Lippman then called Brainerd's pension plan consultant, who advised him that if an employee did not wish to participate in a pension plan, he could waive his right to do so. After the waiver form was prepared, Lippman reviewed it carefully with Laniok and asked Laniok if he fully understood it and found it satisfactory. Laniok replied that he did, and signed the form.

Lippman's deposition testimony was somewhat different from his affidavit. According to the deposition, Lippman told Laniok that "because of his age, we don't think we could pay him that much money he wanted," Laniok replied that he was willing to negotiate, and in a later conversation Lippman and Laniok arrived at a negotiated wage. Lippman drafted the pension waiver and had Laniok sign it because "he was 58 or 59 years old at the time.... And checking what his pension costs would be. They were very exorbitant, very costly. I told him that is why I could only pay him the fee we agreed upon, the wage." Laniok agreed, and signed the waiver immediately before beginning work, with no further discussion of its terms.

The parties agree on the terms of Brainerd's pension plan, and also that Laniok was not informed of these terms at the time he signed the waiver. Brainerd's pension plan was a "defined benefit plan," see 29 U.S.C. § 1002(35), entirely funded by the employer, with no contributions required from an employee. The plan provided that all employees were eligible to participate after one year of service and had vesting provisions that were generous by the standards of the time, with 30% vesting of benefits after three years of service and increased vesting of 10% per year thereafter until an employee was 100% vested after 10 years of service. In addition, the plan provided a life insurance benefit. The

plan had no provisions relating to waiver of participation.

At some time in 1985 or 1986, seven or eight years after Laniok started to work for Brainerd, Laniok asked to retract his waiver, but either Lippman or Brainerd's controller told him that he could not. Laniok retired from Brainerd in 1988, after having worked there for 10 years. According to calculations made by Brainerd during the course of this litigation, if not for the waiver Laniok would have been entitled to a pension benefit of $750 per month as long as he lived, or to a single lump sum payment of $70,500. Laniok made a claim for pension benefits to the plan administrator, but his claim was denied on the basis of the waiver he had signed. His appeal to the Advisory Committee was also denied, and he thereafter brought this suit.

After some discovery, both parties moved for summary judgment. Laniok also moved to amend his complaint to add a state-law age discrimination claim. After first rejecting the Advisory Committee's contention that the district court lacked subject matter jurisdiction, the court held that an individual waiver of pension plan participation is not prohibited by ERISA. The court went on to find that Laniok's waiver was not prohibited by ERISA's age discrimination provision, 29 U.S.C. § 1052(a)(2), or the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. Finally, the court examined the circumstances of Laniok's waiver, determined that the waiver was knowingly and voluntarily made, and consequently granted the Advisory Committee's motion for summary judgment. This appeal followed.

## Discussion

### Subject Matter Jurisdiction

■ The Advisory Committee argues that Laniok's suit should be dismissed for lack of subject matter jurisdiction because Laniok is not a "participant" in an ERISA plan and is therefore not entitled to bring an action for benefits. The applicable section of ERISA provides in relevant part that:

A civil action may be brought—(1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

29 U.S.C. § 1132(a)(1)(B). ERISA defines the term "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7). The Supreme Court has recently construed this language as including former employees "who have 'a colorable claim' to vested benefits," because such claimants "may become eligible" within the meaning of the statute by prevailing in a suit for benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989) (citation omitted); accord *Saladino v. ILGWU National Retirement Fund,* 754 F.2d 473, 476 (2d Cir.1985).

Although the Advisory Committee characterizes Laniok's claim as one for damages for misrepresentation leading to the execution of the waiver, we think it clear that Laniok is claiming that he was entitled to benefits under the pension plan because his waiver was invalid. Laniok worked for 10 years for an employer whose pension plan allowed all employees to participate and under which partial vesting occurred after only three years of service. We agree with the district court that "[r]egardless of the outcome of the instant action, it is clear that plaintiff has a sufficiently 'colorable' claim for pension benefits to confer jurisdiction on this court." 753 F.Supp. at 1118.

### Waiver of Right to Participate in ERISA Pension Plan

■ Although ERISA is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), we have found no provision, and the parties have identified none, generally prohibiting an individual from waiving his right to participate in a pension plan. It would be surprising if there were

such a provision, since ERISA does not require all eligible individuals to participate in a plan, explicitly recognizing, for example, that an employee may decline to contribute to a plan that requires employee contributions for participation. See, e.g., 29 U.S.C. § 1053(b)(1)(B).

Allowing an eligible individual to decline to participate and to waive his right to do so does not seem to us to be inconsistent with the purposes of ERISA. ERISA was designed, among other things, "to protect ... the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans...." 29 U.S.C. § 1001(c). The legislative history of the statute, as well as its substantive provisions, show that Congress intended "to protect contractually defined benefits," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 113, 109 S.Ct. at 955 (citation omitted), and to ensure that "if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it," *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. at 375, 100 S.Ct. at 1733. See also *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 120 (2d Cir.1991). Allowing an individual to relinquish his opportunity to "fulfill[ ] whatever conditions are required" to qualify for benefits is not inconsistent with protecting the legitimate expectations of those who are entitled to benefits.

Moreover, ERISA does not require that a worker be offered any particular retirement benefits. See *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Although the Congress that enacted ERISA sought to improve the equitable character of private retirement plans and to encourage increased participation in them, it also recognized that such plans were voluntary on the part of the employer. See, e.g., H.R. Rep. No. 533, 93rd Cong., 1st Sess. 1–2 (1973), reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4639–40; S.Rep. No. 383, 93rd Cong., 1st Sess. 1 (1973), reprinted in 1974 U.S.Code Cong. & Admin.News

4890, 4890. Since ERISA did not change the voluntariness of an employer's decision to offer benefits, we are hesitant to conclude that ERISA was intended to prohibit an employee from declining to accept the offer.

Finally, we find support for our conclusion in precedent upholding an individual's ability to settle or waive claims of discrimination in violation of the ADEA or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., so long as the waiver is made knowingly and voluntarily. See *Gilmer v. Interstate/Johnson Lane Corp.*, — U.S. —, —, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991) (ADEA); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 & n. 15, 94 S.Ct. 1011, 1021 & n. 15, 39 L.Ed.2d 147 (1974) (Title VII); see also *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 402 (2d Cir.), cert. denied, — U.S. —, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989); *Coventry v. United States Steel Corp.*, 856 F.2d 514, 522 (3d Cir.1988). Congress has recently endorsed the conclusion that a knowing and voluntary waiver of ADEA claims is enforceable by enacting legislation permitting such waivers if certain requirements are met. Older Workers Benefit Protection Act, Pub.L. No. 101–433, § 201, 104 Stat. 978, 983 (1990).

Although the right of an individual to participate in a pension plan is analogous to the rights given up when ADEA or Title VII claims are waived, they are not, of course, the same. We do not suggest that ADEA or Title VII protections can be prospectively waived before discrimination occurs. See, e.g., *Alexander v. Gardner–Denver Co.*, 415 U.S. at 52, 94 S.Ct. at 1021. Nevertheless, we find the reasoning of the ADEA and Title VII waiver cases instructive. Those cases permit an individual to relinquish the statutorily-protected right to obtain redress for past discrimination, i.e., the right to attempt to obtain future economic benefits by asserting an ADEA or Title VII claim. We see no reason to afford greater protection to the statutorily-protected right to qualify for future economic benefits by participating in an

ERISA pension plan, particularly since the waiver of pension plan participation does not presuppose any wrongdoing on the part of the employer.

The American Association of Retired Persons (AARP), appearing as amicus curiae, contends that allowing an eligible worker to waive the right to participate in an ERISA pension plan would be contrary to a line of cases holding that the terms of the plan documents cannot be altered by informal communications between employers and plan beneficiaries, citing *Moore v. Metropolitan Life Insurance Co.*, 856 F.2d 488, 492 (2d Cir.1988), and would allow employers to avoid ERISA pension plan standards in such areas as vesting of benefits, see 29 U.S.C. § 1053, by obtaining individual waivers of such protections from employees. We disagree. We do not believe that an individual waiver of the right to participate varies the terms of the plan itself; it does not alter the plan's definition of eligibility. Moreover, it is precisely because we find no ERISA provision at the relevant time mandating participation for all who are eligible that we hold permissible an individual waiver of participation. Our decision should by no means be interpreted as approving the individual waiver of pension plan standards that ERISA does mandate.

■ Having concluded that an individual generally may waive the right to participate in a pension plan governed by ERISA, we come to the principal statutory argument made in this court by Laniok and the AARP. They contend that the district court erred in rejecting Laniok's claim that his waiver of pension benefits is invalid because it violates ERISA's age discrimination provision, 29 U.S.C. § 1052(a)(2).

At the time Laniok executed his waiver, 29 U.S.C. § 1052(a)(2) provided that:

No pension plan may exclude from participation (on the basis of age) employees who have attained a specified age, unless—

(A) the plan is a—

(i) defined benefit plan, or

(ii) target benefit plan ..., and

(B) such employees begin employment with the employer after they have attained a specified age which is not more than 5 years before the normal retirement age under the plan.

Under this provision, although a pension plan could not generally exclude older employees on the basis of age, there was a limited exception allowing the types of plans listed in subsection (A) to exclude the employees described in subsection (B). The exception was created because Congress was concerned that the cost of financing retirement benefits would discourage an employer from hiring older employees who were close to retirement age. See H.R. Rep. No. 807, 93rd Cong., 2d Sess. 17, reprinted in 1974 U.S.Code Cong. & Admin. News 4670, 4684. As Congress explained, a defined benefit plan, like Brainerd's, would be permitted to exclude employees who first began working for the employer when they were within five years of "normal retirement age," using the plan's definition of "normal retirement age." Id. Thus, if a pension plan provided for a "normal retirement age" of 65, the plan could exclude employees who started work at the age of 60. Id. However, if a pension plan defined "normal retirement age" as the *later* of age 65 or the completion of 10 years of service, a new employee, however old when he started, could not reach "normal retirement age" only five years after starting work, and such a plan could not exclude older employees on the basis of their age. See H.R.Conf.Rep. No. 1280, 93rd Cong., 2d Sess. 262, reprinted in 1974 U.S.Code Cong. & Admin.News 5038, 5044–45.

■ Because the Brainerd pension plan defined "normal retirement age" as the later of age 65 or the completion of 10 years of service, § 1052(a)(2) would not have allowed the Brainerd pension plan to provide that a new employee like Laniok was excluded from participation on the basis of his age, and the plan in fact contained no such provision.[1] The parties

---

1. The district court stated that because the Brainerd pension plan was a defined benefit

agree that the denial of Laniok's benefits was not based on any age-related provision of the plan itself, but was based on Laniok's individual waiver of participation in the plan. Laniok and the AARP argue, however, that this distinction makes no difference; they maintain that since ERISA's age discrimination provision, § 1052(a)(2), prohibited the Brainerd pension plan from directly excluding Laniok on the basis of his age, Brainerd should not be permitted to achieve the same result indirectly by obtaining Laniok's waiver of participation.

Although we do not find the issue to be an easy one, we are persuaded that the age discrimination provision of ERISA does not prohibit an individual waiver of pension plan participation by an older employee, even if that provision would not allow the pension plan to exclude the older employee by its terms, so long as the waiver is knowing and voluntary. Refusing to allow individual waivers of participation when an older employee is involved would be equivalent to imposing mandatory pension plan participation on eligible older employees. Because, as explained above, ERISA does not mandate participation by all eligible employees as a general matter, we would be hard-pressed to justify imposing such a requirement on older employees alone, particularly since at the time of Laniok's waiver § 1052(a)(2) was designed to provide greater flexibility regarding older employees, not less.[2]

■ The problem of potential employer abuse raised by appellant and the AARP is, however, a serious one. Although we believe that ERISA permits individuals, including older individuals like Laniok, to waive their opportunity to participate in pension plans even if the employer could not exclude them, such individuals are re-linquishing a right that ERISA indicates a strong congressional purpose of preserving. In order to ensure that an individual decision characterized as a waiver is not, in fact, an impermissible exclusion, it is appropriate that an individual's waiver of his right to participate in a pension plan be carefully examined to ensure that it is knowingly and voluntarily made.

In the analogous ADEA waiver situation, we have similarly required that a waiver be strictly scrutinized. *Bormann v. AT & T Communications, Inc.,* 875 F.2d at 403. In *Bormann,* we adopted the "totality of the circumstances" standard applied by the Third Circuit, *id.* (citing *Coventry v. United States Steel Corp.,* 856 F.2d at 524), and Congress has explicitly indicated approval of this approach to determining whether ADEA waivers are knowing and voluntary, S.Rep. No. 263, 101st Congress, 2d Sess. 32, reprinted in Dec. 1990 U.S.Code Cong. & Admin.News (No. 9) 1509, 1537. We agree with the district court that a similar totality of the circumstances inquiry is appropriate in determining whether an individual waiver of the right to participate in an ERISA plan is knowing and voluntary.

In *Bormann,* we identified a number of factors that were useful in determining whether the totality of the circumstances showed that the release of an ADEA claim was knowing and voluntary, and we believe that these factors are equally relevant to a waiver of participation in an ERISA pension plan. *Bormann v. AT & T Communications, Inc.,* 875 F.2d at 403. The factors, initially enumerated in *EEOC v. American Express Publishing Corp.,* 681 F.Supp. 216, 219 (S.D.N.Y.1988), and cited with approval by the Third Circuit in *Coventry,* 856 F.2d at 523, are, as modified by *Bormann:*

---

plan, one of the types of plans listed in subsection (A) of § 1052(a)(2), it was therefore "expressly exempted from the purview of this provision." 753 F.Supp. at 1119. This reasoning was incorrect because it was also necessary to consider the effect of subsection (B) of § 1052(a)(2).

**2.** We are aware that § 1052(a)(2) has since been amended to eliminate this flexibility, and now provides that "No pension plan may exclude from participation (on the basis of age) employees who have attained a specified age." 29 U.S.C. § 1052(a)(2), as amended by Pub.L. No. 99–509, § 9203(a)(1), 100 Stat. 1874, 1979 (1986). We, of course, must deal with the effect of the statutory language that governed at the time of the waiver, although we note that it is not at all clear that the change in the statute has any effect on individual waivers of participation for older workers or for workers in general.

1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, [as well as whether an employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so] and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Bormann v. AT & T Communications, Inc.*, 875 F.2d at 403 (citations omitted). As we emphasized in *Bormann*, this list "is obviously not exhaustive," and, as was the case in *Bormann*, the absence of a single factor is not necessarily dispositive. *Id.* at 403 & n. 1.

Obviously, the circumstances to which these factors apply will differ if the waiver at issue is agreed to by a prospective employee rather than a current employee. A prospective employee would generally evaluate the total package offered by the prospective employer—including hours, wages, nature of work and other conditions of employment as well as pension benefits—and compare it to his other employment alternatives, which could well include another prospective employer who offers no pension benefits at all. We emphasize that any attempt to establish a checklist of all applicable factors or to insist on rigid adherence to such a list is foreclosed by the very nature of the inquiry. The essential question is a pragmatic one: whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as "knowing and voluntary."

We now turn to the circumstances of the waiver in the case before us. The district court recognized its obligation to scrutinize the circumstances of Laniok's waiver to determine whether it was knowing and voluntary, and explicitly considered a number of the factors described above before granting summary judgment for the Advisory Committee. In so ruling, however, the district court relied on factual determinations adverse to Laniok that it was not entitled to make on a motion for summary judgment. For example, the district court assumed that Laniok had agreed in his first interview with Lippman to waive his right to participate in Brainerd's pension plan in exchange for higher wages than he would otherwise have received. On this basis the court concluded, among other things, that Laniok had sufficient opportunity to negotiate the terms of the waiver and adequate time to consult with an attorney in the period between the initial interview and the actual execution of the waiver. Because Laniok asserts that the issue of waiver was never raised until he was presented with the typed document by Lippman's assistant, the district court's assumption to the contrary was not justified on a motion for summary judgment.

As well as disputing whether Laniok agreed to waive his right to participate in the plan in his first, preemployment interview, or whether the waiver was presented without discussion several days after he started work, the parties disagree on a number of other facts relevant to determining whether Laniok's waiver was knowing and voluntary. For example, the Advisory Committee tells us that Laniok bargained for and received higher wages during the entire 10 years he worked at Brainerd in exchange for the potential pension benefits he waived, but Laniok contends that his wages were the same as those of other employees doing the same work and were unaffected by his waiver of pension plan participation. Similarly, the Advisory Committee urges that Laniok's knowledge of the terms of the Stromberg pension plan demonstrates that he was sophisticated enough about pension benefits to have a clear idea of the value of the rights he was giving up, while Laniok insists that without some knowledge of the terms of the Brainerd pension plan, his rudimentary information regarding the Stromberg plan was meaningless.

It may be that when Laniok applied for a job at Brainerd, he intended to work for

only a few more years, volunteered to waive participation in the pension plan in order to obtain the hours, work conditions and wages in which he was principally interested, and then signed a clear waiver form with sufficient information and sufficient time to have made a knowing and voluntary decision, whether or not in retrospect he thinks that it was a wise one. However, it may be that Laniok did not agree to waive pension plan participation before he was hired, but, after he started work, signed the waiver form without a clear idea of what he was giving up, without receiving anything of value in exchange, without time to reflect or consult an attorney and under threat of losing his job if he refused. The undisputed facts in this record do not support the conclusion that Laniok's waiver was knowing and voluntary as a matter of law. Genuine factual disputes as to material issues remain, and their resolution by the trier of fact will significantly affect the ultimate decision as to whether the waiver here was knowing and voluntary. Accordingly, we reverse the district court's grant of summary judgment to the Advisory Committee, and we remand for further proceedings.

*Motion to Amend*

The district court discussed the validity of Laniok's waiver under the ADEA, but did not explicitly rule on Laniok's motion to amend his complaint to add a claim of age discrimination under New York Executive Law § 296. Laniok's brief in this court concedes that because no complaint was timely filed with the Equal Employment Opportunity Commission, he makes no claim under the ADEA. We accordingly express no opinion on the validity of such a claim. Laniok does argue, however, that by discussing the substantive issues relating to the applicability of the ADEA, the district court implicitly granted his motion to add a state-law age discrimination claim to his complaint. The Advisory Committee argues, on the same basis, that the district court implicitly denied Laniok's motion to amend. Because, as stated above, we find it necessary to remand this case in any event, we will leave it to the district court to resolve this matter in the first instance.

Reversed and remanded for further proceedings consistent with this opinion.

VAN GRAAFEILAND, Circuit Judge, dissenting:

The statement of facts on page 3 of appellant Laniok's brief contains the following pertinent excerpt:

The employer's reason for the waiver being drafted was that, due to Mr. Laniok's age, his pension costs would be too high (A. 98, 92–93).

On page 9 of his brief, Laniok's counsel elaborates on this point as follows:

When asked by his own counsel why he had Mr. Laniok sign the waiver, Mr. Lippman [Brainerd's president] stated (A. 98):

A. Because I think he was 58 or 59 years old at the time, right.

Q. That is correct.

A. And checking what his pension costs would be. They would be very exorbitant, very costly. I told him that is why I could only pay him the fee we agreed upon, the wage.

Laniok worked for Brainerd until June 30, 1988, when he retired. During that time Brainerd made no payments to the Pension Plan on his behalf.

On September 27, 1989, Laniok brought this action seeking judgment against the Advisory Committee of the Brainerd Manufacturing Company Pension Plan in the amount of $75,000 plus interest, costs, disbursements and attorneys' fees. After issue was joined, both parties moved for summary judgment. Laniok included with his moving papers a "STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE." Among these "FACTS" was the following:

At the time of signing the waiver, Mr. Laniok understood that he was giving up his rights to pension benefits.

This statement was supported fully by Laniok's testimony on deposition:

I says, "Why should I sign it?" I says, "That means that I don't get any benefits."

\*    \*    \*    \*    \*    \*

Q. When you say you knew what that meant when you signed it, you're referring to Exhibit 1 [the waiver], correct?

A. Yes.

\*    \*    \*    \*    \*    \*

Q. You read Exhibit 1 then before you signed it, right?

A. Yes.

Q. And you understood it?

A. I understood it.

Despite the clear and unambiguous language of the written waiver and Laniok's unequivocal admission that he understood it, my learned colleagues contrive to make a question of fact for a jury. I disagree. If the summary judgment process is to have any meaning at all, the district court's decision is a paradigmatic example of its proper use.

In a nutshell, there are no factual issues for a jury to decide. It is undisputed that Laniok had some familiarity with pension plans, because he was a participant in another company's plan and was receiving benefits from it. Defendants do not contend that Laniok was familiar with the details of the Brainerd Plan, and we therefore may accept this lack of familiarity as a given. What then is the factual issue that must be presented to a jury? There is none. The issue, in short, is one of law, not of fact, and it was decided correctly by the district court.

We are not confronted here with the concern we expressed in *Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 402 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989), for "the dilemma of older workers who, after many years of employment, are offered enhanced termination benefits for a waiver of legal rights." When Laniok signed the waiver, he had no legal right to participate in Brainerd's Pension Plan. Under the terms of the Plan, Laniok would not be eligible to participate in the Plan until he had been employed by Brainerd for a year, and there was no assurance whatever that this contingency would be met. What we have here is an application for employment by a 58 year old man, already receiving a pension from another company, who intended to work for only a limited number of years. As his counsel has pointed out, "[t]he employer's reason for the waiver being drafted was that, due to Mr. Laniok's age, his pension costs would be too high." This was purely and simply a business decision that did not impose upon Brainerd the obligations of a fiduciary. *See Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1416–17 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986); *Payonk v. HMW Indus., Inc.*, 883 F.2d 221, 224–29 (3d Cir. 1989). The legality and enforceability of the waiver in this case is a question of law. Once again, I cast my lot with the district judge. *See Rattner v. Netburn*, 930 F.2d 204, 211 (2d Cir.1991) (Van Graafeiland, dissenting). I vote to affirm.