**Manuel M. FERRIS, Plaintiff,**

**v.**

**MARRIOTT FAMILY RESTAURANTS, INC., Defendant.**

Civ. A. No. 93–10882–JLT.

United States District Court, D. Massachusetts.

Nov. 7, 1994.

Carol M. Merchasin, Morgan, Brown & Joy, William Shields and Mary Ellen Whiteman, Day, Berry & Howard, Boston, MA, for Manuel M. Ferris.

Francis C. Lynch, Palmer & Dodge, Boston, MA, for Marriott Family Restaurants, Inc.

### MEMORANDUM

TAURO, Chief Judge.

Plaintiff brings this suit to recover retirement benefits allegedly due him under an employment contract. Defendant argues that a previous settlement agreement, signed by the plaintiff, has relieved it of any liability.

Presently before the court are the parties' cross motions for summary judgment.

## I.

### Background

On July 27, 1983, plaintiff became the president of Howard Johnson's Hotel Division. The terms of the employment contract (the "Employment Contract") entitled plaintiff to supplemental retirement benefits. Howard Johnsons offered this provision as consideration for the plaintiff's relinquishment of pension benefits under the plan of his previous employer.

Subsequently, Howard Johnsons entered into an agreement by which Marriott Corp. and Prime Motor Inns, Inc. ("Prime") purchased Howard Johnsons. This proceeded in two steps: First, Marriott Corp. acquired all of Howard Johnsons' stock. It then transferred the Hotel Division to Prime. The remaining portion of Howard Johnsons changed its name to Marriott Family Restaurants, Inc. ("Marriott"), the defendant in this case.[1]

Soon after this transaction, plaintiff's position was terminated by Prime. The three parties, plaintiff, Marriott and Prime, entered into negotiations to determine their rights under the Employment Contract. In addition, the parties discussed plaintiff's obligations arising from an "interest free loan, payable upon demand" in the amount of $150,000, given by Howard Johnsons under the Employment Contract.

On May 1, 1986, the parties entered into a Settlement Agreement ("Settlement Agreement"). The Settlement Agreement provided that Prime would assume all obligations under the Employment Contract. It specifically obligated Prime to make monthly cash payments, through July 31, 1988, corresponding to salary and other perquisites, continuing life insurance and health benefits for two years, and retirement benefits in the amount of approximately $93,500.00 per year, for life,

---

1. By its own admission, Marriott is a "successor and assign" of Howard Johnsons and is liable under the Employment Contract to the same extent as Howard Johnsons.

as specified in the Employment Contract. The Settlement Agreement also required setting off the monies owed by plaintiff, pursuant to the "interest free loan", from the monthly cash payments due from Prime.

Prime began to make its payments under the Settlement Agreement. In September of 1990, Prime filed for bankruptcy protection and, as a result, has been unable to satisfy its remaining obligations for retirement benefits under the Settlement Agreement. Plaintiff is seeking to obtain these benefits from Marriott.

## II.

### Analysis

Each party has moved for summary judgment. "Summary Judgment is warranted where the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine factual dispute and the moving party [is] entitled to judgment as a matter of law." *Siegal v. American Honda Motor Co.*, 921 F.2d 15, 17 (1st Cir.1990); Fed.R.Civ.P. 56(c). In this case, summary judgment rests on the proper interpretation to be given to the release clause in the Settlement Agreement.

In its motion, Marriott argues first that the Employment Contract does not constitute a "plan" under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and therefore federal law does not apply. Alternatively, it argues that under either federal or state law the Settlement Agreement constitutes a valid and knowing waiver of plaintiff's rights against Marriott. Plaintiff, on the other hand, argues that ERISA is applicable, and that the release of Marriott under the Settlement Agreement was conditioned upon the full performance of Prime's obligations. He argues in the alternative that the release provision of the Settlement is ambiguous and, therefore, summary judgment is inappropriate at this time.

Because the court concludes that the release provision of the Settlement Agreement is unambiguous and constitutes a release under either federal or state law, the defendant's Motion for Summary Judgment will be allowed.

■■■■ Under state and federal law, the interpretation of an unambiguous contract is a question of law for the court. *See Lawrence–Lynch Corp. v. Dept. of Environmental Management*, 392 Mass. 681, 682, 467 N.E.2d 838 (1984); *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989). Under either scheme, the court draws from Massachusetts law to interpret the contract. *See Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 585 (1st Cir.1993) ("Because state law provides the richest source of law of contract interpretation, we have incorporated state law principles in the process of developing a body of federal common law."). Basic contract interpretation mandates that "[w]here the wording of a contract is unambiguous, the contract must be enforced according to its terms." *O'Connell Management Co. v. Carlyle–XIII Managers, Inc.*, 765 F.Supp. 779, 782 (D.Mass 1991); *ER Holdings, Inc. v. Norton Co.*, 735 F.Supp. 1094, 1097 (D.Mass. 1990). Whether proceeding under federal or state law, the court must yield to the plain meaning of the contract.

### A. The Settlement Agreement

■■■ The Settlement Agreement begins with a re-statement of the history surrounding the negotiations. It states that "Prime and Marriott have advised [plaintiff] that Prime has assumed from Howard Johnsons the obligations to [plaintiff] under the Employment Agreement." It continues with four page description of Prime's obligations to the plaintiff, including I. Monthly Cash Payments, II. Continuing Benefits, III. Vacation Days [2] and IV. Retirement Benefits.

---

2. Prime honored the first three obligations. Plaintiff received monthly cash payments of $20,-305.75, representing $265,000 per year for salary, monthly payments of approximately $2,500 in lieu of life insurance and a company car, and $1,150 per month in lieu of long-term disability payments. The amount due on the loan was deducted at $5,555/month. Prime maintained, through July of 1988, a $100,000 life insurance policy for plaintiff, travel accident insurance and medical insurance; Prime also reimbursed plaintiff for the cost of annual physicals for three

The next section, entitled "V. Releases" reads:

5.1 *Except with respect to the foregoing obligations,* none of which is released until each and every one of such obligations has been fully satisfied and met *in accordance with the terms hereof,* the parties hereto release, acquit and forever discharge each other from any and all claims, demands and causes of action whether in contract or in tort, legal or equitable, now known or yet to be discovered, accrued, or yet to accrue, and specifically including any claims which may be asserted by the parties hereto, their heirs, successors and/or assigns from all of which claims each party specifically undertakes to indemnify and hold harmless the other(s). (emphasis added).

The Settlement Agreement concludes with a miscellaneous section and is signed by all parties.

It is clear that all obligations of the parties are expunged without condition except "the foregoing obligations." These "foregoing obligations" are not released until "every one of such obligations has been fully satisfied and met *in accordance with the terms hereof* . . . ."

Plaintiff interprets this language as conditioning the general release of his claims against both Prime and Marriott "on the satisfaction of the obligations of the settlement agreement by any of the parties, should Prime, the primary obligor, fail to meet its obligations." (Pltf.Mem. in Supp. of Sum.J. at 16). They further argue that "the release language in question would have no meaning if Marriott were released from its obligations merely by becoming a signatory to the Agreement." (Pltf.Opp.Mem. at 11). This court, however, is of the opinion that it is plaintiff's interpretation that would render the clause inoperable.

The clause distinguishes the "foregoing obligations" from a larger set of obligations which the parties may or may not owe each other. Only these "foregoing obligations" remain subject to the conditions of the release.

years. Finally, Prime paid $9,173 as compensation for nine days of accrued and unused vaca-

Any "general" obligations Marriott had to the plaintiff as Howard Johnsons' successor or assignee are expunged immediately, as they would not fall within the subsection excepted. If that were not so, the clause "except with respect to the foregoing obligations" would be mere precatory language. *See Baybank Middlesex v. 1200 Beacon Properties,* 760 F.Supp. 957, 963 (D.Mass. 1991) (a contract should be interpreted so that none of its terms are rendered meaningless).

Under any reasonable reading of the release, the "foregoing obligations" must refer to those created and specified in section I–IV of the Settlement Agreement. Since these are the only obligations "excepted" from the release, any other source of obligation, i.e., the Employment Contract and the demand note, are immediately terminated. If plaintiff wishes to draw retirement benefits from Marriott, therefore, he must somehow derive this obligation from the Settlement Agreement itself.

Plaintiff asserts that the Settlement Agreement "makes Prime the primary, but not sole, obligor for payment of the retirement benefit." (Pltf.Opp.Mem. at 11). He states further that "the release is *expressly conditioned* on satisfaction of the obligations of the settlement agreement *by any of the parties, should Prime, the primary obligor, fail to meet its obligations.*" (Pltf.Mem. in Supp. of Sum.J. at 16 (emphasis added)). The argument's Achilles' Heel is that this "expressly conditioned" proviso is nowhere to be found. The Settlement Agreement does not designate either party as a "primary" or "secondary" obligor. Neither does the exception to the release use the phrase "any of the parties." The only condition is the satisfaction of the obligations in accordance with their own terms.

Sections I–IV of the Settlement Agreement contain operative language creating the benefits due the plaintiff. Marriott's name is not mentioned in any one of these sections. Each is specific that "Prime is to pay" or

tion for 1985.

"Prime shall provide." *E.g., Settlement Agreement, Section IV. Retirement Benefits* ("Prime shall provide Ferris with retirement benefits as set forth in Section 4 of the Employment agreement."). Simply put, there is no language imposing an obligation on Marriott as a guarantor, insurer or warrantor of Prime's obligation. Since the "foregoing obligations" do not create any onus, present or future, conditioned or not, on the part of Marriott, Marriott does not come within the bounds of the exception in the release.

Accordingly, the unambiguous terms of the contract serve as a waiver of any and all claims against Marriott. The release is only conditional as to Prime's obligations. Plaintiff's view that this reading renders the release without meaning is mistaken. The release was meant to extinguish all obligations except those created by the Settlement Agreement. The condition, therefore, was to ensure that neither Prime nor plaintiff, the only parties with remaining obligations, would attempt to use a more omnibus release clause to escape their future duties.[3] Marriott is simply released from the entire transaction.

## B. Was the Waiver Valid and Knowing

The court must next determine if plaintiff's waiver of his right to pursue claims for retirement benefits against Marriott was "knowing and voluntary". It should be noted at the outset that plaintiff did not simply sign away his retirement benefits. Apparently, there was some doubt as to whether Marriott or Prime would be responsible for fulfilling Howard Johnsons' obligations under the Employment Contract. The Settlement Agreement merely designated Prime, presumably because they ended up the Howard Johnsons' Hotel Division, as the party which would compensate plaintiff. Along with releasing Marriott, the Settlement Agreement solidified plaintiff's claims against Prime.

As a general rule, rights under an ERISA plan may not be waived or assigned.[4] This rule does not apply to plans governing the rights and benefits of certain highly compensated employees or managers. ERISA §§ 206(d)(1), 201(2), 29 U.S.C. § 1056. The parties agree that plaintiff has the ability, under ERISA, to waive his rights. Under federal law, the waiver of ERISA benefits is reviewed with a more careful standard and the court must find that the release was made knowingly and voluntarily. *Rodriguez–Abreu v. Chase–Manhattan Bank, N.A.,* 986 F.2d 580, 587 (1st Cir.1993); *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan,* 935 F.2d 1360, 1367 (2d Cir.1991). The Second Circuit, in *Laniok,* developed a rigorous "totality of the circumstances" test by which to evaluate an employees release of retirement benefits. *Laniok,* 935 F.2d at 1367–68. The Second Circuit set out the following factors to aid the court's determination:

1. The plaintiff's education and business experience;

2. The amount of time the plaintiff had possession of or access to the agreement before signing it;

3. The role of plaintiff in deciding the terms of the agreement;

4. The clarity of the agreement;

5. Whether the plaintiff was represented by or consulted with an attorney; and

6. Whether the consideration given in exchange for the waiver exceed employee benefits to which the employee was already entitled by contract or law.

There is no contention that the negotiations amply satisfied the first, second and fifth factors of the inquiry. The plaintiff was a highly paid and successful businessman. He was represented by counsel throughout the negotiation process and was personally active in the negotiations. Plaintiff had two opportunities to personally review a draft of the Settlement Agreement before signing it.

---

3. For instance, if the "exception" were not inserted, an unscrupulous party may press a contention that even those obligations created by Settlement Agreement were released, thereby rendering the whole agreement meaningless.

4. There is some dispute as to whether the Employment Contract constituted a plan subject to ERISA. As shown below, the court does not need to reach this issue.

Plaintiff specifically calls into question factors three, four and six. With respect to the third factor, however, plaintiff admits that his attorney drafted the Settlement Agreement. He asserts without explanation that "the substantive terms of the agreement were dictated by Marriott," and that "Marriott was also given time and opportunity to alter the language of the release and chose not to do so." (Pl.Opp.Mem. at 8). That Marriott declined to alter the language of the agreement does not change the fact that it was drafted by plaintiff's attorney. As to the first claim, the court is unaware of how Marriott could have dictated the substantive terms of the agreement. For all intents and purposes, the retirement benefits under the Agreement mirror those in the Employment Contract, drafted well before Marriott came on the scene.

Plaintiff also attacks the clarity of the Settlement Agreement (factor four). As noted above, the court finds the Agreement to be clear and unambiguous. Plaintiff cites to *Lumpkin v. Envirodyne Indus. Inc.*, 933 F.2d 449 (7th Cir.1991), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 for the principle that "a solvent entity cannot shed its ERISA benefit obligations pursuant to a Settlement Agreement absent clear and unambiguous language mandating this result." (Pltf.Opp.Mem. at 8). Here the Settlement Agreement clearly released Marriott from any claims.[5]

Finally, plaintiff claims that "since [plaintiff] received *less* under the Settlement Agreement than he was entitled to under the Employment Agreement, he received absolutely *no* meaningful consideration to support the release of Marriott's pension obligations." (Pltf.Opp.Mem. at 9). This is simply untrue. Marriott contends, and the documents confirm, that the retirement benefits package under the Settlement Agreement is the same

as the one specified in the Employment Contract.

Plaintiff argues that "Marriott cannot seriously contend that by Prime's agreeing to a fixed payment schedule for this demand note [the $150,000 interest free loan] that Marriott provided adequate consideration for plaintiff to relinquish his valuable pension rights under the employment agreement." (Pltf.Opp.Mem. at 10). First, the court reiterates that Plaintiff did not "relinquish" his pension rights. He merely chose to allow Prime to assume the obligations rather than Marriott. Next, plaintiff should realize that if both Prime and Marriott were equally responsible for Howard Johnsons' duties under the Employment Contract, then both Prime and Marriott had the right to call the $150,000 note *immediately*.[6] Marriott gave up this right, and Prime agreed to a delayed payment scheme. The court finds plaintiff's argument that his release of Marriott was a one-sided deal, unpersuasive.

The factors set forth in *Laniok* are meant as aids in a total review of the circumstances. The court is of the opinion that the factors clearly indicate plaintiff's release of Marriott was knowing and voluntary. An inquiry of the entire situation leads to the same conclusion. This result is neither surprising nor inexplicable. The company that plaintiff worked for, Howard Johnsons, was purchased by two other companies, Marriott and Prime. Plaintiff was employed by Howard Johnsons' Hotel Division. This portion went to Prime. As stated in the Settlement Agreement itself, "Prime and Marriott have advised [plaintiff] that Prime has assumed from Howard Johnsons the obligations to [plaintiff] under the Employment Agreement." *Settlement Agreement*, p2. Taking this into consideration, it is certainly understandable that Prime would assume the responsibility for plaintiff's retirement benefits and that plaintiff would release Marriott.

5. Plaintiff's brief asserts that "Section 5.1 of the Settlement Agreement provides that none of the parties is released 'until each and every one of the obligations [including retirement obligations] has been fully satisfied and met.'" (Pltf.Opp.Mem. at 9). The court cannot help but notice that the phrase "none of the parties" is not within the quote taken from the Settlement Agreement. The reason for this is clear. The Settlement Agreement does not contain the phrase "none of the parties is released" or its equivalent.

6. According to the Employment Contract, this was an "interest-free loan, payable on demand" from Howard Johnsons to plaintiff. Employment Contract 3(e).

The court concludes that the terms of the release of Marriott are unambiguous. Further, it concludes that plaintiff's waiver of any retirement benefits it may have received from Marriott was knowing and voluntary.[7]

## III.

Defendant counterclaimed for costs and attorneys fees. It alleges that in the release the plaintiff agreed to indemnify all parties for all suits arising out of this transaction, and that this is such a suit. The court finds no merit in this argument.

## IV.

### *Conclusion*

For the foregoing reasons, the defendant's motion for summary judgment with respect to plaintiff's claims is ALLOWED; defendant's motion for partial summary judgment with respect to its counterclaim is DENIED. The plaintiff's motion for summary judgment is DENIED.

---

**7.** The parties disagreed whether the Employment Contract was a "plan" subject to ERISA. Due to the fact that the court finds the Settlement Agreement to have unconditionally released Marriott and to have been a knowing and voluntary waiver, the outcome would be the same under state law or federal law. This distinction is moot.