Sharon M. SMART, Plaintiff,

v.

**The GILLETTE COMPANY LONG–TERM DISABILITY PLAN, Defendant.**

Civ. A. No. 94–11210–WGY.

United States District Court, D. Massachusetts.

May 23, 1995.

---

**2.** The Court does not address the issue of qualified immunity which was not raised by defen-   dants.

384

Richard L. Burpee, Burpee & DeMoura, Boston, MA, for plaintiff.

Richard P. Ward, David T. Lyons, Ropes & Gray, Boston, MA, for The Gillette Co.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

Sharon M. Smart ("Smart") brings this action against The Gillette Company Long–Term Disability Plan ("Gillette" or the "company") for long-term disability benefits under

the Employee Retirement Income Security Act, 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1993) ("ERISA"). Gillette and Smart have agreed that the Court resolve, based upon the stipulated facts set forth in their Joint Pretrial Memorandum, the issue of whether Gillette violated ERISA in denying Smart's claim for long-term disability benefits. *See Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992); *Boston Five Cents Sav. Bank v. Secretary of the Dep't of Hous. and Urban Dev.*, 768 F.2d 5, 11–12 (1st Cir.1985).

### I. BACKGROUND [1]

Smart began working for Gillette in March, 1976, as a Senior Product Test Analyst. Joint Pretrial Memorandum ("Pretrial Memo") ¶ 6. Ten years later, on March 20, 1986, Smart was involved in an automobile accident in which she injured her left knee. As a result of the accident, Smart was required to undergo four surgical procedures between June, 1986, and May, 1990. Pretrial Memo ¶¶ 7–8.

On September 7, 1988, Gillette sent a letter to Smart terminating her as part of a reduction in force. The letter contained proposed terms of a separation agreement including a release of all state and federal claims Smart may have against Gillette. Pretrial Memo ¶ 11 & Exh. B. Smart sought to exempt any workers' compensation claims from the release. Gillette agreed to this exemption, and presented Smart with a revised separation agreement on December 16, 1988 (the "revised agreement" or the "December agreement"). Under the terms of the revised agreement, Smart would, in consideration of her release of all claims except the workers' compensation claim, receive forty-four weeks of severance pay and other benefits to which she would not otherwise have been entitled. Smart reviewed the terms of the December agreement with her lawyer prior to signing it on December 29, 1988. Pretrial Memo ¶¶ 12–14. Although Smart says that she understood the December agreement to be waiving all claims under

1. The facts are presented as agreed to by the parties in their Joint Pretrial Memorandum.

state and federal law, she stated in her deposition that at the time she signed the revised agreement she did not know what ERISA was, did not know she was relinquishing rights under ERISA, and did not intend to release any rights under ERISA. Pretrial Memo ¶ 15.

Subsequently, Smart made a claim for workers' compensation benefits as a result of the injuries she received in the automobile accident. Smart and Gillette settled this claim by entering into an Agreement for Redeeming Liability by Lump Sum Under G.L. Ch. 152, § 48. Pursuant to this settlement, Smart received $43,750. In November, 1989, Smart filed a claim for disability benefits with the Social Security Administration and began receiving monthly Social Security disability payments in the amount of $887.00 retroactive to March, 1989. Pretrial Memo ¶¶ 19–20 & Exh. E.

In October, 1991, Smart filed an application for benefits under Gillette's Long Term Disability Plan (the "Plan"). Gillette claims that it never received a copy of this application. Smart resubmitted her application to Gillette in February, 1992. On April 30, 1992, Gillette denied Smart's application for benefits. Smart filed a request for reconsideration which was denied on November 19, 1992. Smart then filed a Notice of Appeal with the Senior Vice President of Gillette on December 10, 1992. The appeal was denied. On May 13, 1992, Smart once again filed for reconsideration of her claim. Gillette did not respond to this request. Smart then served Gillette with a demand letter under Mass. Gen.L. ch. 93A. Gillette responded by rejecting all of Smart's demands for relief. Pretrial Memo ¶¶ 22–31 & Exhs. F–O. Rebuffed, Smart filed suit in this court.

Smart contends that the Corporate Medical Director of Gillette abused his discretion in deciding that she did not have a "total and permanent disability" as defined by the Plan. She argues that she has been "totally and permanently disabled" since September, 1988, and that she did not waive any of the disability benefits to which she may have been entitled.

## II. DISCUSSION

The critical issue before the Court is whether, by signing the revised separation agreement dated December 16, 1988, Smart released her rights under the Plan and under ERISA to collect Plan benefits. Gillette argues that by signing the December agreement Smart released her rights to all Plan benefits. On the contrary, Smart argues that the agreement does not terminate her rights under the Plan.

Both parties agree that the conditioning of severance benefits on an agreement to waive an ERISA claim is not prohibited by the statute. See Stiltner v. Beretta U.S.A. Corp., No. 94–1323, 1995 WL 25643, at *15 (4th Cir. Jan. 18, 1995); Leavitt v. Northwestern Bell Tel. Co., 921 F.2d 160, 162 (8th Cir.1990). Such a waiver, however, "must be an intentional relinquishment or abandonment of a known right or privilege." Rodriguez–Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 587 (1st Cir.1993); Ferris v. Marriott Family Restaurants, Inc., 878 F.Supp. 273, 277 (D.Mass.1994) (Tauro, C.J.) (release must be made "knowingly and voluntarily"). Thus, this Court must first examine the circumstances surrounding the execution of the December agreement to determine whether Smart knowingly and intentionally agreed to its terms. If the Court determines that Smart's consent was knowing and intentional, the Court will then interpret the agreement to determine whether by its terms it waives ERISA benefits. If the Court determines that it does, it will next turn to the question of whether Gillette has waived its right to raise the revised agreement as a defense.

### A. Knowing and Intentional Release

In determining whether a plaintiff has knowingly and intentionally released her rights under ERISA, courts examine the totality of the circumstances surrounding the signing of the agreement. Several circuits have held that the following extrinsic factors are relevant to the inquiry: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was rep-

resented by or consulted with an attorney; and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. *See, e.g., Finz v. Schlesinger,* 957 F.2d 78, 82 (2d. Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992); *see also Ferris,* 878 F.Supp. at 277–78 (adopting the six factors laid out by the Second Circuit). While these factors are not exhaustive, *see Finz,* 957 F.2d at 82, nevertheless, in this instance all six favor Gillette. First, Smart is well educated and experienced: she has a Bachelor of Science degree in Psychology and Sociology from Suffolk University as well as an Associate's degree in General Education from Quincy Junior College. She has also completed some graduate course work. Moreover, Smart has over ten years of experience as a trained professional at Gillette. Second, Smart was in possession of Gillette's proposed separation agreement for more than three months (from September 7, 1988 to December 28, 1988) before signing the document. Third, Smart was actively involved in determining the terms of her severance—indeed, she negotiated with Gillette to add the workers' compensation exception to the release. Fourth, the terms of the release are clear and unambiguous. Fifth, Smart had the benefit of counsel during the time she was negotiating her separation with Gillette. Finally, Smart received forty-four weeks of severance pay—above and beyond what an employee in Smart's position normally would have received—in consideration for her willingness to release all claims against Gillette (with the exception of the workers' compensation claim). This Court, therefore, finds that Smart knowingly, intentionally, and voluntarily agreed to the severance plan at issue and the general release contained therein.

### B. Contract Interpretation

■ The Court now turns to the task of interpreting the December agreement itself. The document states:

In consideration of the severance pay and other benefits to be provided ... you do hereby ... hold harmless The Gillette Company ... from any and all claims, charges, complaints, or causes of action, now existing, both known and unknown or arising in the future ... with the sole exception of any rights that you may have under the Massachusetts Workers Compensation Act.

Pretrial Memo, Exh. C. Smart argues that this provision does not release her rights under the Plan because it does not explicitly mention ERISA and at the time she signed the letter agreement she did not know what ERISA was. This argument fails. The language of the agreement explicitly states that Smart waived all claims "known and unknown." Thus, the fact that she might have been unaware of the possibility of an ERISA claim is irrelevant.[2] Indeed, courts have held that a general release of claims such as the one at issue bars an ERISA action even when ERISA is not specifically mentioned in the release. *Fair v. International Flavors & Fragrances, Inc.,* 905 F.2d 1114, 1115–16 (7th Cir.1990) (a general release is valid as to all claims of which a signing party could have been made aware upon reasonable inquiry); *Franz v. Iolab, Inc.,* 801 F.Supp. 1537, 1543 (E.D.La.1992) (same).

■ Next Smart argues that the release does not apply to her ERISA claim because the initial separation letter sent to Smart by Gillette in September, 1988, stated that Smart would be able to continue to participate in Gillette's Medical and Dental Plans during any severance pay periods. Smart maintains that she reasonably believed at the time she signed the December agreement that she was entitled to long-term disability benefits under the Plan during her forty-four week severance period. Pretrial Memo ¶¶ 16–17. Thus, she could not have knowing-

---

**2.** The fact that the possibility of bringing an ERISA claim may have been "unknown" to Smart when she signed the agreement does not undermine this Court's earlier determination that Smart's waiver was "knowing and intentional." *See supra.* In determining that Smart's waiver was "knowing and intentional" the Court was primarily concerned with Smart's bargaining power and her capacity to sign such a general waiver. Once it is established that Smart had such capacity, however, the court need not concern itself with whether Smart had actual knowledge of each and every possible claim she might have against Gillette.

ly and intentionally released her rights to such benefits.

This argument, however, is also flawed. Although it is true that in some of its correspondence Gillette seems to concede that Smart was covered through November, 1989, the separation agreement that Smart *actually* signed says nothing about continued participation in the Plan. In interpreting a severance agreement in an ERISA action, courts construe the meaning of the agreement in accordance with the plain meaning of the words. *Rodriguez–Abreu*, 986 F.2d at 585; *Ferris*, 878 F.Supp. at 275. Because the language of the agreement clearly states that Smart "hold[s] harmless The Gillette Company ... from any and all claims ... with the sole exception of ... [claims under] the Massachusetts Workers Compensation Act," earlier offers made by Gillette and Smart's subjective expectations regarding her continued coverage are irrelevant. *See Pahlavi v. Palandjian*, 809 F.2d 938, 945 (1st Cir.1987) (contracting parties are bound by objective manifestations and expressions, not subjective expectations); *see also ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1261–63 (1st Cir.1991) (extrinsic evidence cannot be introduced to contradict clear terms of agreement). Thus, under the plain meaning of the agreement, Smart is barred from now bringing this claim.

### C. Waiver

Under the regulations promulgated pursuant to ERISA, a plan administrator is required to provide every claimant who is denied a claim for benefits a written notice setting forth the reason for the denial. 29 C.F.R. § 2560.503–1(f) (1994). Smart thus argues that Gillette is barred from using the release as a defense to this action because the release was not mentioned as a reason for the denial of her claim until she threatened suit. *See Matuszak v. Torrington, Co.*, 927 F.2d 320, 322–23 (7th Cir.1991) (the Court "would emasculate ERISA's disclosure requirements if it were to defer to reasons that [were] first identified on appeal in the

District Court, years after the decision at issue.") Here Gillette disputes Smart's factual assertion and claims that in the course of its correspondence with Smart, Gillette *did* in fact inform her that the release barred her claim. *See* Pretrial Memo Exh. O. Nevertheless, Gillette argues that even if it did not initially cite the release as the reason for Smart's denial, they have not waived the right to assert it now. Indeed, Gillette is correct in noting that ERISA requires only that the Plan notify a plaintiff of the reasons *under the terms of the Plan* for its denial of her request for benefits. 29 C.F.R. § 2560.503–1(f). Because the release was not a part of the Plan, Gillette correctly asserts that they did not have to raise it as a defense in its initial correspondence with Smart.[3]

### III. CONCLUSION

For the reasons stated above, Sharon M. Smart is barred from bringing this claim against her former employer Gillette. This case is hereby dismissed. Judgment will enter for Gillette.

---

3. Having determined that all of Smart's claims to benefits have been waived by the December agreement, the Court need not reach the question of whether Smart was in fact "totally and permanently disabled" within the meaning of the Plan.