**CAPITAL CITIES/ABC, INC.,
et al., Plaintiffs,**

v.

**Rockie RATCLIFF, et al., Defendants.**

**Robert HUTSELL, et al., Plaintiffs,**

v.

**The KANSAS CITY STAR COMPANY,
et al., Defendants.**

Civil Action Nos. 94–2488–GTV, 95–2212–GTV.

United States District Court,
D. Kansas.

Jan. 24, 1997.

---

Joseph R. Colantuono, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, Michael S. Horne, John M. Vine, Covington

& Burling, Washington, DC, for plaintiffs in No. 94–2488.

Robert J. Bjerg, Lynne C. Kaiser, Rachel H. Baker, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, J. Brett Milbourn, R. Frederick Walters, Walters, Bender & Strohbehn, Kansas City, MO, for defendants in No. 94–2488.

Robert J. Bjerg, Lynne C. Kaiser, Rachel H. Baker, Seigfreid, Bingham, Levy, Selzer & Gee, Kansas City, MO, J. Brett Milbourn, R. Frederick Walters, Walters, Bender & Strohbehn, Kansas City, MO, for plaintiffs in No. 95–2212.

Joseph R. Colantuono, Cathy J. Dean, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, Michael S. Horne, John M. Vine, Jeffrey B. Coopersmith, Covington & Burling, Washington, DC, for defendants in No. 95–2212.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

These are consolidated cases involving the question of whether current and former newspaper carriers of *The Kansas City Star* and *The Kansas City Times* are entitled to employee benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The court will review the procedural posture of the consolidated cases to assist in the understanding of the motions now pending before the court.

On November 30, 1994, Capital Cities/ABC, Inc., The Kansas City Star Co., the Star's four ERISA plans and the plans' claims committees (collectively referred to as "The Star") filed a declaratory judgment action in this court, *Capital Cities/ABC, Inc., et al. v. Ratcliff,* Case No. 94–2488–GTV, and named three newspaper carriers as defendants. In that action, The Star sought a judgment declaring that the members of the defendant class of newspaper carriers are bound by their contractual commitment that they have no rights to benefits under the four ERISA plans (Count I); the term "employees" as used in the four ERISA plans does not include the defendant class (Count II); the defendant class is estopped from

pursuing claims for benefits under the four ERISA plans (Count III); and the decisions of the four claims committees to deny benefits should be upheld (Count IV).

On December 2, 1994, thirty-one *Kansas City Star* newspaper carriers ("the Carriers") filed an action against the Kansas City Star Company, its ownership corporations, the four ERISA plans and the claims committees in the United States District Court for the Western District of Missouri. *Hutsell, et al. v. The Kansas City Star, et al.,* our Case No. 95–2212–GTV. On May 4, 1995, Judge Joseph E. Stevens, Jr. of the Western District of Missouri transferred the *Hutsell* action to the District of Kansas, where it was subsequently consolidated with the *Ratcliff* action pending before this court.

In the *Hutsell* action, the Carriers seek benefits and other relief under both ERISA and several state law claims. Specifically, the Carriers' ERISA claims include: a claim for benefits pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (Count I); breach of fiduciary duty and removal of the administrators of the Plans pursuant to § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2) (Count II); and a claim for injunctive relief pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (Count III).

The Carriers' state law causes of action include: breach of contract (Count IV); fraudulent misrepresentation (Count V); negligent misrepresentation (Count VI); illegal deductions from wages pursuant to the Kansas Wage Payment Act, K.S.A. § 44–319 (Count VII); illegal non-payment of overtime compensation pursuant to the Kansas Minimum Wage and Maximum Hour Law, K.S.A. § 44–1201 *et seq.* (Count VIII); illegal non-payment of overtime compensation pursuant to the Missouri Minimum Wage Law, Mo. Stat.Ann. § 290.500 *et seq.* (Count IX); and breach of contract for employee fringe benefits (Count X).

In an order dated September 20, 1996, the court formally certified a defendant class of Carriers defined as:

All persons who have been home delivery or single copy agents for the Kansas City Star Company pursuant to agency agree-

ment since the delivery agent system was implemented by The Star in or about 1978. The court further ordered that The Star give notice of these pending suits to all potential class members.

## I. PENDING MOTIONS

The consolidated cases are now before the court on The Star's motion for summary judgment in both actions (Doc. 73), and the Carriers' motions to strike the declarations of Dermot R. Hayes (Doc. 82) and F. David Lake, Jr. (Doc. 83).

The court has reviewed the briefing of the parties regarding the preceding motions and is now prepared to rule.[1] For the reasons set forth below, the motion to strike the declaration of Hayes is granted in part and denied in part, the motion to strike the declaration of Lake is denied as moot, and the Star's motion for summary judgment is granted.

## II. FACTUAL BACKGROUND[2]

The Kansas City Star Company publishes *The Kansas City Star.* Until March 1990, it also published *The Kansas City Times,* a separate morning newspaper. The Kansas City Star Company is a wholly owned subsidiary of Capital Cities/ABC, Inc.

As part of its compensation package, The Star offers to certain of its employees two employee pensions plans and two employee welfare benefit plans, as those terms are defined under ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and § 3(1), 29 U.S.C. § 1002(1). These plans are: The Capital Cities/ABC, Inc. Savings & Investment Plan ("the Savings Plan"); The Capital Cities Publishing Pension Plan ("the Pension Plan"); The Kansas City Star Company Group Insurance Plan ("the Insurance Plan"); and The Kansas City Star Spending Account Program ("the Spending Account Program"). A single benefits committee serves as the plan administrator for the Savings Plan and the Pension Plan. A separate single benefits committee

serves as the plan administrator for the Insurance Plan and the Spending Account Program. These committees will be referred to as the "Plan Committees."

The Carriers are individuals who currently or formerly delivered *The Kansas City Star* and/or *The Kansas City Times.* Each carrier entered into an Agency Agreement with The Star. The Agency Agreements provide that:

> The Agent is and will continue to be a self-employed independent contractor and not an employee or servant of The Star. . . .
>
> It is expressly understood and agreed between the parties that The Agent will not be treated as an employee for federal, state, or local tax purposes. . . .
>
> It is further expressly understood that, as an independent contractor, the Agent will not receive, and has no claim to, any benefits or other compensation currently paid by The Star to its employees or hereafter declared by The Star for the benefit of its employees. The Agent's compensation under this Agreement shall consist, in its entirety, of the fees set forth in paragraph 8 below.

Paragraph 8 of the Agency Agreement provides for a series of fees, including a delivery fee of a specified amount for each paper delivered, a delivery service incentive fee, and a collection incentive fee.

In September 1994, twenty-three Carriers made a formal request for benefits to the Plan Committees for themselves and all carriers similarly situated. On November 30, 1994, the Plan Committees denied the benefit claims in identical decisions. The Committees gave three bases for their decisions. First, they held that each of the newspaper carriers expressly agreed in an Agency Agreement that the carrier would not receive, and had no claim to, any benefits under The Star's benefit plans. Second, the Committees held that the newspaper carriers do not qualify as "employees" under the

---

1. The Carriers have requested oral argument on the motion for summary judgment (Doc. 91). Because the court finds that oral argument will not be of material assistance in the resolution of the motion, the request is denied. D.Kan.R. 7.2.

2. The court will consider the following facts as uncontroverted in accordance with Fed.R.Civ.P. 56 and D.Kan.R. 56.1 for the purposes of The Star's summary judgment motion.

Plans. Finally, the Committees held that the newspaper carriers fall outside the common law definition of "employee" and therefore are not entitled to participate in the benefit plans under ERISA.

### III. STANDING

The court must determine whether the parties have standing to pursue their actions prior to addressing the substance of the motions pending before it. The Star has brought the *Ratcliff* action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a determination that current and former newspaper carriers are not eligible for employee benefits created and governed under ERISA. The Carriers have brought claims in Counts I through III of the *Hutsell* action seeking benefits to which they are allegedly entitled under ERISA.

An individual claiming benefits under an ERISA plan must be either a "participant" or a "beneficiary." 29 U.S.C. § 1132(a)(1). ERISA defines "participant" as:

> any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). ERISA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 1002(6). Because the definition of employee under ERISA is circular, the United States Supreme Court has adopted the common law agency test for determining whether an individual is an employee. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 1348, 117 L.Ed.2d 581 (1992). ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

The Carriers' standing to bring suit under ERISA must be based upon their status as employees of The Star who are or may become eligible for benefits under The Star's ERISA plans. The Tenth Circuit has held that the determination of whether an individual is an employee is a question of fact. *Roth v. American Hosp. Supply Corp.*, 965 F.2d 862, 865 (10th Cir.1992).

The Carriers and The Star disagree as to whether the Carriers are employees or independent contractors. The Carriers urge the court to address the issue of their employment status prior to reaching the two other bases for the Plan Committees' decisions. The Carriers, in fact, maintain that prior to ruling on the substantive issues which The Star raises in its motion for summary judgment in the *Hutsell* action, the court must determine whether the Carriers are employees under the common law test articulated in *Darden*. The Carriers insist that because they are employees under the common law test, they are entitled to benefits under the Plans.

The determination of whether the Carriers have standing to bring the *Hutsell* action depends on a resolution of the question which they contend is the crux of their action— whether or not they have a colorable claim to vested benefits as employees of The Star. *Abraham v. Exxon Corp.*, 85 F.3d 1126, 1129 (5th Cir.1996). It is not possible for the court to determine standing without commencing a highly factual inquiry into the question of whether the Carriers are employees under the common law test articulated in *Darden*.

Instead, the court finds that in the interest of judicial economy, it should consider whether the *Ratcliff* declaratory judgment action brought by The Star can resolve the issues at hand. ERISA does not specifically permit fiduciaries such as the Plan Committees in the *Ratcliff* action to file a declaratory judgment action seeking interpretation of their plans. *Prudential Ins. Co. of Amer. v. Doe*, 76 F.3d 206, 210 (8th Cir.1996). The court does have jurisdiction, however, under the Declaratory Judgment Act, 28 U.S.C. § 2201, to determine whether the Plan Committees' decisions should be upheld. *Id.* Accordingly, the court will proceed to address the issues raised in the current pending motions.

### IV. MOTIONS TO STRIKE

■ The Carriers have filed motions to strike the declarations of Dermot R. Hayes

and F. David Lake, Jr. These declarations were filed in support of The Star's motion for summary judgment.

■ A declaration made under penalty of perjury may be submitted in lieu of an affidavit. 28 U.S.C. § 1746(2). Declarations, however, are subject to the same requirements as affidavits submitted under Rule 56(e). *See* Fed.R.Civ.P. 56 and D.Kan.R. 56.1.

The Carriers contend that the court should strike portions of the Hayes declaration because (1) paragraphs three, four, and six contain material and information outside the administrative record; (2) Hayes fails to identify the origin and accuracy of Exhibit B to the declaration; and (3) Hayes fails to state that Exhibits F and G are true and accurate summaries of the Insurance Plan and the Spending Account Program.

Upon review of the declaration and Exhibits in question, the court concludes that The Star has not established that the information in paragraphs three, four, and six were before the Plan Committees during the administrative proceedings. Thus, the court will grant the motion to strike as to these paragraphs. In addition, the court will not consider Exhibit B because Hayes has failed to identify its origin or swear to its accuracy. Finally, the court denies the Carriers' request to strike Exhibits F and G of the Hayes declaration. In paragraph seven, Hayes clearly identifies Exhibits F and G as "true and correct copies of relevant portions of ... (c) the Kansas City Star Employee Group Insurance Plan (Exh. F); [and] (d) the Capital Cities/ABC Spending Account Program (Exh. G)."

The Carriers also seek an order striking the Lake declaration. The Lake declaration addresses certain tax matters which may have a bearing on the Carriers' status as either employees or independent contractors of The Star. As discussed below, the court need not address this issue in deciding the motion for summary judgment. Accordingly, the Carriers' motion to strike the Lake declaration is denied as moot.

## V. SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

In the present motion, The Star seeks summary judgment on its claims in the *Ratcliff* action (Counts I–IV) and partial summary judgment on the Carriers' claims in the *Hutsell* action (Counts I–III). The court first will consider the motion with respect to the *Ratcliff* action because a favorable ruling on behalf of The Star will obviate the need to address the claims in the *Hutsell* suit.

The Star contends that it is entitled to a judgment upholding the decisions of the Plan Committees on two of the three bases given for the decision. Specifically, The Star contends that (1) the court should enforce the Agency Agreements which clearly and unequivocally provide that the Carriers are not

employees of The Star and are not entitled to employee benefits, and (2) the Carriers are not eligible for benefits under the terms of the four ERISA Plans. The Star contends that the court can decide the issue of the Carriers' eligibility for ERISA benefits on either of these two bases and it need not address the third basis for the Plan Committees decisions—whether the Carriers are employees of The Star under the common law agency test.

## A. Standard of Review

The court must review the denial of benefits under an ERISA plan de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). If the plan gives the administrators discretionary authority, then the "decision must be upheld unless it was arbitrary and capricious, not supported by the substantial evidence or erroneous on a question of law." *Thorpe v. Retirement Plan Of Pillsbury Co.*, 80 F.3d 439, 442–43 (10th Cir.1996) (citations omitted). Although The Star urges the court to apply the arbitrary and capricious standard to the Plan Committees' denial of benefits to the Carriers, it does not point to any specific language in its four ERISA Plans that vests discretionary authority in the administrators. The court, therefore, will apply a de novo standard of review to the Committee decisions.

## B. The Plan Committees Decisions

The Plan Committees articulated three rationale for their denial of benefits to the Carriers. The court will limit its discussion to the first two bases: (1) that the Carriers are not entitled to benefits due to the Agency Agreements; and (2) that the Carriers are not eligible employees under the terms of the Plans.

### 1. The Agency Agreements

The first basis upon which the Plan Committees predicated their denial of benefits to the Carriers was the fact that the Carriers had entered into Agency Agreements with The Star specifically providing that they are independent contractors and not entitled to benefits. The Star contends that summary judgment should be granted on this issue because it is undisputed that all Carriers signed such agreements and the agreements are binding upon them.

The Carriers urge the court to ignore the provisions of the Agency Agreements and to award them benefits because they meet the definition of "employee" under the common law test articulated by the Supreme Court in *Darden*, 503 U.S. 318, 112 S.Ct. 1344. The court, however, is not convinced that the outcome turns on the issue of whether the Carriers are independent contractors or employees of The Star.

There is nothing in ERISA mandating that an employer must cover all its employees under a benefit plan; an employer is free to discriminate against and exclude particular classes as long as certain statutory minimum participation requirements are met. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983).[3] Accordingly, even if the court assumes that the Carriers are employees of The Star, this does not automatically qualify them for benefits under the Plans.

In *Boren v. Southwestern Bell Tel. Co., Inc.*, 933 F.2d 891 (10th Cir.1991), the Tenth Circuit addressed an argument substantially similar to the one currently advanced by the Carriers. In that case, Boren entered into a series of one-year contracts with Southwestern Bell to provide architectural supervision services. The contracts specifically declared that Boren was an independent contractor and that he was not to be considered an employee "for any purposes." *Id.* at 892. Boren alleged that he was entitled to benefits

---

**3.** *Shaw* makes clear that employers are free to exclude certain classes of employees with respect to both pension and welfare benefit plans. ERISA's minimum participation requirements, however, apply only to pension plans; welfare benefit plans are totally exempt from such re-

quirements. *Crouch v. Mo–Kan Iron Workers Welfare Fund*, 740 F.2d 805, 808–09 (10th Cir. 1984). The Star's pension plans are in full compliance with the ERISA requirements. *See Abraham*, 85 F.3d at 1130–31 (discussing the minimum participation requirements).

under the company's pension plan regardless of the contractual agreement because he was an "employee" as defined in the plan.

In holding that Boren was not entitled to benefits, the court explained that:

> [u]nder the common law, the promise of a pension is a unilateral offer which an employee accepts by performing the work governed by his employment contract. However, the express terms of Mr. Boren's service contracts, in which he agreed that he was not considered an employee "for any purpose," prevent him from claiming that the work he performed for Southwestern Bell constituted an acceptance of the company's unilateral offer of pension benefits.

*Id.* at 894 (citations omitted). Because the court found that the service contracts defined the relationship of the parties, it declined to address Boren's argument that he was an employee under the common law test.

The Carriers contend that *Boren* has no precedential value because the Supreme Court effectively overruled the case in *Darden*, 503 U.S. 318, 112 S.Ct. 1344. The court disagrees. In *Darden*, an insurance company's former agent brought suit against the company to recover ERISA benefits. The agent had signed an agreement which purported to forfeit his entitlement to plan benefits if, within one year of leaving the company's employment, he sold insurance for any competitor within twenty-five miles of his prior business location. When the agent allegedly violated the agreement, the company disqualified him from receiving benefits. The agent then sued claiming the benefits were nonforfeitable because they had already vested.

The fundamental issue in *Darden* was whether the agent had standing to seek his benefits under ERISA. As noted above, only plan "participants" may enforce the substantive provisions of ERISA. A participant is defined as an employee or former employee of an employer. 29 U.S.C. § 1002(7). Reversing the lower court's expectation-based test, the Supreme Court held that the term "employee," for purposes of ERISA, incorporates the "traditional agency law criteria for identifying master-servant relationships." *Darden*, 503 U.S. at 319, 112 S.Ct. at 1346.

The Carriers now argue that *Darden* stands for the proposition that courts, prior to assessing a claimant's contractual right to benefits, must make an initial determination whether the claimant is an employee under the common law test. The Carriers, therefore, suggest that *Boren*'s threshold contractual assessments of benefit entitlement are no longer valid. The Carriers read *Darden* too broadly.

It appears that the Carriers have confused the issue of standing with the issue of whether parties can contractually define entitlement to ERISA benefits. Here, as in *Boren*, the Carriers contractually agreed prior to commencing employment with The Star that they would not be entitled to benefits. The Agency Agreements define the relationship of the parties. The Carriers are not entitled to benefits because the promise of benefits was a unilateral offer which they expressly rejected under the terms of the Agency Agreements.[4] The court concludes that the Plan Committees properly denied benefits to the Carriers on the basis that the Carriers had signed Agency Agreements foreclosing their right to benefits.

### 2. Terms of the Plans

■ The Plan Committees also denied the Carriers benefits on the grounds that the terms of The Star's ERISA Plans excluded the Carriers from benefit eligibility. The Carriers are not entitled to benefits unless they are "eligible" employees under each of the plans, regardless of whether they meet the common law agency test for "employee" status. *See Roth*, 965 F.2d at 867–68 (common law agency factors are irrelevant where

---

4. The Carriers argue that the court must consider whether they knowingly and voluntarily waived the right to benefits under the Agency Agreements. *See Laniok v. Advisory Committee of the Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1363 (2d Cir.1991). Waiver is the intentional relinquishment of a known right. Here, the Carriers did not waive the right to benefits because that right never accrued. The present case is distinguishable from *Laniok* because in that case, the employee signed the waiver of benefits a few days after he began employment.

individual has waived his right to employer's benefit plans); *see also Trombetta v. Cragin Fed. Bank,* 102 F.3d 1435, 1439–40 (7th Cir. 1996) (nothing in ERISA compels employee benefit plans to use the term "employee" in the same way it is used in the statute). The court finds that all of The Star's plans demonstrate an intent to exclude the Carriers from coverage.

The four ERISA plans at issue define eligible employees in the following ways: (1) the Savings Plan excludes from the definition of employee "an individual who is hired by the Company pursuant to an employment agreement or a personal services agreement if such agreement provides that such individual shall not be eligible to participate in the Plan"; (2) the Pension Plan defines a participant as "an Employee who is eligible to be and becomes a participant"; (3) the Insurance Plan provides benefits to full-time or part-time employees who elect to participate in the Insurance Plan; and (4) the Spending Account Program provides benefits to eligible employees who elect to participate.

The Carriers clearly are excluded from entitlement to benefits under the language contained in the Pension Plan. The Carriers have signed agreements which provide that they are not eligible to participate in the plan. Further, although the language of the remaining three plans is not as specific, the use of the term "eligible employee" in those plans indicates an intent to exclude certain workers from participation. In that light, the court cannot divorce its interpretation of the ERISA plans from the unequivocal terms of the Agency Agreements. *See Boren,* 933 F.2d at 894 (regardless of terms in company's ERISA plans, plaintiff is bound by his service contract in which he agreed that he would not be considered an employee for any purpose); *see also Roth,* 965 F.2d at 867 (common law agency factors for determining employment status are irrelevant where plaintiff has waived his right to benefits).

In an attempt to circumvent the proscriptive language of The Star's plans, the Carriers, citing *Vizcaino v. Microsoft Corp.,* 97 F.3d 1187 (9th Cir.1996), argue that their denominated status as "independent contractors" in the Agency Agreements does not control their entitlement to benefits. The court disagrees. In *Vizcaino,* a group of "temporary" employees, who had signed instruments labelling themselves as independent contractors but whom Microsoft later conceded to be common law employees, sued Microsoft for improperly excluding them from coverage under the company's savings and stock option plans.

Microsoft's savings plan, the only plan at issue governed by ERISA, defined participants as all "common law employees" on the company's payroll. A divided Ninth Circuit panel held that Microsoft's "independent contractor" classifications warranted little deference and the plaintiffs' actual status as common law employees required that they be covered under both plans. *Vizcaino,* 97 F.3d at 1194–96. The majority premised its opinion on a finding that Microsoft did not intend to deny benefits from the plaintiffs themselves; Microsoft merely intended to preclude independent contractors from coverage. *Id.* at 1195. Indeed, the agreements that the plaintiffs entered into prior to commencing employment included no express waiver of benefits. The majority held that because Microsoft conceded that the plaintiffs were common law employees and not independent contractors, the company had no legitimate basis for rejecting the plaintiffs' benefit claims. *Id.* at 1196.

The Star's employee benefit plans in the instant action are clearly distinguishable from those at issue in *Vizcaino.* The Star's plans neither incorporate nor adopt the common law definition of an employee in delineating the scope of their coverage. To the contrary, The Star's plans impose eligibility requirements evincing an unequivocal intent to exclude the Carriers from participation. The *Vizcaino* majority, in fact, readily acknowledged that employers are free to draft employee benefit plans discriminating against certain groups of workers. *Id.* The court finds that under the terms of the plans and the Agency Agreements, the Carriers are not eligible for any of the benefits provided under The Star's pension and welfare plans. Thus, the court concludes that the Plan Committees acted correctly in denying

benefits to the Carriers under this alternative basis.

## VI. CONCLUSION

The court concludes that summary judgment in favor of The Star is appropriate in the *Ratcliff* action. All members of the class of Carriers are bound by this order upholding the Plan Committees' decisions. In addition, the Carriers' ERISA claims, brought in Counts I through III in the *Hutsell* action, are foreclosed by the court's ruling that the decisions of the Plan Committees were correct.

Pursuant to 28 U.S.C. § 1367(c)(3), the court, in its discretion, declines to exercise supplemental jurisdiction over the state-law claims brought in Counts IV through X in the *Hutsell* action. Accordingly, both above-captioned cases are now closed.

IT IS, THEREFORE, BY THE COURT ORDERED that The Star's motion for summary judgment (Doc. 73) is granted.

IT IS FURTHER ORDERED that the Carriers' motion to strike the declaration Dermot R. Hayes (Doc. 82) is granted in part and denied in part.

IT IS FURTHER ORDERED that the Carriers' motion to strike the declaration of F. David Lake, Jr. (Doc. 83) is denied as moot.

The above-captioned cases are now closed.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**